**SOUTHERN CONSTRUCTION COMPANY and Tri-State Insurance Company, Petitioners,**

v.

**STATE INDUSTRIAL COMMISSION and Clyde F. Mann, Respondents.**

No. 38121.

Supreme Court of Oklahoma.

Feb. 3, 1959.

Kerr, Lambert, Conn & Roberts, R. Burl Harris, Ada, for petitioners.

Claud Briggs, Wm. Walter Hentz, Jr., Oklahoma City, Mac Q. Williamson; Atty. Gen., for respondents.

HALLEY, Justice.

On June 11, 1955, Clyde F. Mann, referred to herein as claimant, filed a claim for compensation against his employer, Southern Construction Company and its insurance carrier, Tri-State Insurance Company, referred to herein as respondents, stating that on April 1, 1955, while in the employ of respondent Southern Construction Company he sustained an accidental injury consisting of an injury to his shoulder, right arm and back. The injury occurred while he was engaged in lifting a heavy gear box causing some disability to his person.

Under order of the Commission entered on the 9th day of November, 1955, claimant was awarded temporary total compensation from the date of his injury up to and including June 14, 1955, at which time the Commission found temporary total disability terminated and awarded claimant temporary total compensation accordingly and held the case in abeyance for the future determination as to the extent of permanent disability. This award has been fully paid and satisfied.

Claimant thereafter filed a motion for further medical treatment and for additional compensation because of change of condition for the worse.

The trial judge at the close of the hearing on said motion found the following: that claimant as a result of his injury of April 1, 1955, has suffered a change of condition for the worse since the date of the prior award; that he has been temporarily totally disabled since August 6, 1956, and is still temporarily totally disabled and is in need of further medical treatment, care and attention; that he is entitled to compensation for temporary total disability at the rate of $28 per week from August 6, 1956, to date and to continue during claimant's period of temporary total disability, not to exceed 300 weeks, until further order of the Commission; that claimant is entitled to be furnished such medical attention as may be necessary for correction of his condition due to said injury. Upon such finding the trial judge awarded claimant additional compensation from August 6, 1956, to date or 72 weeks at $28 per week or the total sum of $2,016 and directed that such payments continue until further order of the Commission not to exceed 300 weeks, and directed petitioners to furnish claimant further medical attention.

Petitioners bring the case here for review and contend there is no competent evidence to sustain the finding of the Commission that claimant has suffered a change of condition for the worse since the prior order of the Commission terminating temporary total disability.

Claimant at the original hearing testified that on April 1, 1955, while in the employ of petitioner Southern Construction Company, he sustained an accidental injury at the time and in the manner stated in his claim. Claimant further testified that he was employed by the Southern Construction Company as a mechanic at the time he sustained his injury and was then engaged in lifting and placing in position a heavy gear box weighing about 650 pounds causing the injury stated in his claim. After sustaining such injury he rested about three or four hours and then went back to work and worked about two hours and then went home. He returned to work the next day but was unable to work because of his injury and pain in his back. He then went to Dr. H for treatment who treated him for about one week. The doctor then sent him to Dr. R for further treatment and claimant remained under his care for treatment until November 25, 1955, but the treatment benefited him very little, if any, and he has never been discharged or released by the doctor as able to return to work; that he never had any trouble with his back or shoulder prior to the time he sustained said injury; that he thereafter consulted and was examined and treated by other physi-

cians including Dr. I, but he was benefited very little by such treatment.

The only medical evidence offered by claimant at the original hearing consisted of medical report of Dr. I. The doctor in his report stated that he first saw and examined claimant on June 13, 1955. He obtained a history of the case which is substantially as testified to by claimant and upon that history and his own examination, including x-ray examination, after stating in detail physical conditions found to exist reached the following conclusion:

"It is my impression that the patient has had two separate conditions; which have obviously pre-existed the present injury; however, I think that he has muscle and ligamentous strain in this area with resulting scalenus anticus syndrome myositis of the paraspinous muscles. Films of the low back area show a developmental deformity of the neural arches in the last lumbar vertebra. This has resulted in a 1 cm. forward disc location which would be a first degree strain. * * * I would anticipate these symptoms of pain and numbness will return upon strenuous physical exertion. It is probable that he will ultimately need a spinal fusion in this area; obviously due to the patient's size this will be a rather difficult procedure."

The doctor in a supplemental report later filed and introduced in evidence states that he re-examined claimant on October 8, 1955. He found no change in his condition but felt that the condition found to exist may have been aggravated and brought to life by the injury sustained on April 1, 1955, and recommended further medical treatment and a spinal fusion.

Petitioners offered in evidence medical reports of Drs. R, M and F. Dr. R in his report states that he examined claimant early in October, 1955, and after stating in detail physical conditions found to exist reached the following conclusion:

"My best estimate is that his present status represents aggravation of pre-existing hypertrophic changes in the cervical spine and hypertrophic and congenital conditions in the lumbar spine, which aggravation probably is permanent to the extent of 5% of the body as a whole. I feel that he should become more active, which he seems most unwilling to do."

Dr. M in his report of June 15, 1955, reaches the following conclusion:

"It is my opinion that this man's complaints are due to an old osteo-arthritis in the cervical spine region. There may have been some temporary aggravation of this pre-existing arthritis. I feel that this patient has had adequate treatment and should make an excellent recovery. He should now return to work, gradually increasing his working time.

"I can find no evidence of any permanent partial disability due to his accident of April 1, 1955."

Dr. F in his report of October 23, 1955, states:

"* * * An examination of the patient by physical systems reveals the patient voluntarily splints all movements of the right shoulder and states he is having a considerable amount of difficulty but careful passive movement fails to reveal any evidence of marked limitation of motion in the shoulder and there does not appear to be any spasm.

*       *       *       *       *       *

"*Opinion and Discussion:* This patient apparently has sustained relatively minor injuries possibly to his right shoulder and his upper back superimposed upon some degenerative arthritic changes. It is my opinion that his period of temporary total disability has terminated. I do not believe that any further medical treatment is necessary. I believe that the patient's complaints are bizarre and are out of keeping with the history of his industrial injury and out of keeping with objective findings. I believe that the patient's permanent residual disability is minimal. I believe

that he has a 5% partial permanent disability to the body as a whole as a result of this injury."

Upon this testimony the Commission entered the award first above mentioned terminating temporary total disability.

At the hearing for additional compensation on the ground of change of condition for the worse claimant testified to substantially the same state of facts as testified to at the original hearing and in addition thereto testified that since the prior order and award was made his condition gradually grew worse. He suffered greater pain in his back than he did before. He could not sleep well at night. The only way he got any sleep was to sleep on the floor with his feet elevated on a chair; that prior to the time the original award was entered he was managing and operating a fleet of trucks. He was unable to drive the trucks but he managed the business and obtained the work but hired others to drive the trucks and do the work. His condition however gradually grew worse and the pain so severe that he was unable to continue to operate the trucks and was compelled to dispose of them. He further testified that on November 18, 1955, while he was downtown sitting on a swivel chair he started to get up and as he did so he blacked out. He was taken home by some one in a car, put to bed and placed under the care of a doctor and he was under the care and treatment of the doctor for such condition for about two months. Claimant at that hearing also offered in evidence the deposition of Dr. G. Dr. G however had not examined or treated claimant prior to the time the original award was entered.

The doctor testified that he first saw and examined claimant on August 6, 1956. He obtained a history of the case and upon that history and his own examination found that claimant was suffering from a lower back strain and a probable aggravation of an osteo-arthritic condition of his neck and appeared to be in severe pain. The doctor made x-ray pictures of claimant's back which disclosed the following condition:

"* * * There is a narrowing of the cervical interspaces between the fourth and fifth cervical vertebrae and the interspace between the fifth and sixth vertebrae, the narrowing being more marked between the latter two (2) vertebrae. Osteo-arthritic changes are evident in the anterior and posterior margins of the three (3) involved areas —that is the fourth, fifth and sixth cervical vertebrae bodies. This (indicates) particular Exhibit, No. 1, represents the neck in backward bending. There is marked limitation of the range of motion of backward bending indicated in this film."

The doctor further testifying as to physical conditions found to exist expressed the opinion that claimant was then temporarily totally disabled to do any kind of work and would remain so in the absence of further treatment and that such condition is due to his injury sustained on April 1, 1955. The doctor further testified:

"Q. * * * Doctor Goodfried, assuming that the original temporary total disability on Mr. Mann ended on June 14th, 1955, would you say that since that time he had a change of condition for the worse and that such change had occurred after June 14th, 1955? A. That is the only way that I can presume that he got into the condition of total disability that I found him in when I examined him on August 6th, 1956.

"Q. And it was your opinion that he had gotten worse—is that correct? A. It would under those circumstances appear to me that he had gotten worse."

Dr. W. A. M. in a supplemental report offered by claimant testified that based on claimant's statement and history of the case and x-ray changes that in his opinion claimant had suffered a change of condition for the worse since August 6, 1956.

The evidence of the above two mentioned doctors was admitted over the objection of counsel for petitioners on the

ground that said doctors had not seen or examined claimant prior to the time the ·original award was entered and were therefore not qualified to testify as to a change of condition and contend that the Commission erred in permitting the doctors to testify. In support of such contention petitioners cite and rely upon the case of Barnsdall Oil Co. v. State Industrial Commission, 178 Okl. 289, 62 P.2d 1031. We do not think that .case applicable here because of the difference in the facts. · We have heretofore examined, discussed and distinguished this case. Lumbermen's Supply Co. v. Mackey, 201 Okl. 296, 205 P.2d 870.

In H & H Supply Co. v. Bryant, 204 Okl. 515, 231 P.2d 685, 687, the same question was raised as here. In that case it was contended that a doctor who had not seen and examined claimant prior to the time the original award was made was not qualified to testify as to change of condition. In answering this question we said:

> "Dr. D. H. O'Donoghue, who had not examined respondent prior to the first award was a competent witness to testify for respondent. Lumbermen's Supply Co. v. Mackey, 201 Okl. 296, 205 P.2d 870. He testified he had examined respondent shortly before the hearing in question and estimated his disability to be 40 to 50 per cent, and that according to the history of the disability given him by respondent the respondent's condition was worse than it was at the time of the first hearing. * * *"

We think these authorities sustain the contention of claimant that Dr. G and Dr. W. A. M. were competent and qualified to testify as to change of condition. Especially is this so as to Dr. W. A. M. for he noted changes as revealed by the x-ray in addition to those changes based upon claimant's statements. Claimant's witnesses show that he has become progressively worse.

We conclude that the evidence is sufficient to sustain the finding of the State Industrial Commission that claimant subsequent to the prior award has suffered a change of condition for the worse and is now temporarily totally disabled and entitled to additional compensation as ordered and directed by the Commission.

Award sustained.